IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KAY F. WILSON, individually and as )
Special Administrator of the Estate )
of Joe Wilson, Deceased, )
)
        Plaintiff, ) No. 05 C 174
)
v. )
)
OTIS ELEVATOR COMPANY, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

This diversity action is brought by plaintiff Kay Wilson ("Wilson"), individually and as administrator of the estate of her deceased husband Joe Wilson, against defendant Otis Elevator Company ("Otis"). Joe Wilson worked for the Orica Nitrogen Plant (the "Orica plant") in Seneca, Illinois. Otis manufactured and installed the Orica plant elevator. Joe Wilson was killed while working in the elevator shaft after he was trapped and crushed between the elevator cab and the side of the shaft. Wilson has brought claims against Otis for strict products liability (Counts I and II), negligence (Counts III and IV), and consumer fraud (Count V).[1] Otis now seeks summary judgment on Counts I, II and V and portions of Counts III and IV. I grant that motion in part and deny it in part.

---

[1] Counts I, III and V of her amended complaint are survival actions brought on behalf of Joe Wilson's estate. Counts II and IV are wrongful death actions brought by Wilson individually.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

II.

The facts relevant to Otis' motion for summary judgment are not in dispute. In 1967, Otis installed the elevator at issue at "Prill Tower" of what is now the Orica plant. After that installation, Otis continued to service the elevator pursuant to a maintenance contract that ran through 2002 with some period of interruption in 2000. In 1994, Otis entered into a contract with Orica's predecessor company to perform additional work on the elevator. The contract between Otis and the predecessor company provided the following "workscope":

> Subject: elevator repairs – machine #323842
> remove the old cab and platform and install a
> new sound isolation frame, stainless steel
> cab, and metal platform; install a new car
> operating panel and rewire COP and lights;
> clean and paint the safety plank stiles, and
> crosshead.

The parties agree that an Otis employee performed this work

sometime in 1995. As part of this work, Otis installed a new elevator "car gate" and accompanying cable system. The car gate is a metal utility gate that, when raised using a cable that runs through a sheave, allows access to the elevator car. After the 1995 work, Orica plant workers experienced difficulties with the gate because the cable continually "bounced" or came out of the sheave. Wilson contends that it was this problem that Joe Wilson was attempting to fix when he went into the elevator shaft and was subsequently killed.

III.

Otis argues that Wilson's product liability claims (counts I and II of her amended complaint) are barred by the Illinois products liability statute of repose. That statute provides, in relevant part:

> Subject to the provisions of subsections (c) and (d) no product liability action based on any theory or doctrine shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff. . .

735 ILL. COMP. STAT. ANN. 5/13-213(b) (2005). The statute further provides:

> No product liability action based on any theory or doctrine to recover for injury or

3

> damage claimed to have resulted from an alteration, modification or change of the product unit subsequent to the date of first sale, lease or delivery of possession of the product unit to its initial user, consumer or other non-seller shall be limited or barred by subsection (b) hereof if:
>
> (1) the action is brought against a seller making, authorizing, or furnishing materials for the accomplishment of such alteration, modification, or change . . ., and
>
> (2) the action commenced within the applicable limitation period and, in any event, within 10 years from the date such alteration, modification or change was made . . ., and
>
> (3) when the injury or damage is claimed to have resulted from an alteration, modification or change of a product unit, there is proof that such alteration, modification or change had the effect of introducing into the use of the product unit, by reason of defective materials or workmanship, a hazard not existing prior to such alteration, modification or change.

*Id.* at § 213(c).

Because the Orica plant elevator was installed in 1967, the statute of repose bars Wilson's suit unless she can show that the exception in subsection (c) should apply. Wilson does argue that the 1995 work Otis performed on the elevator was an "alteration" of the elevator such that the statute of repose would not block her claims, which she brought within ten years of those "alterations." Under the alteration exception to the statute of repose, Wilson must show that the alteration to the elevator proximately caused her husband's injuries. *Id.* It is Wilson's burden to show that

4

this exception to the product liability statute of repose applies to her claims. *See, e.g., Masters v. Hesston Corp.*, 291 F.3d 985, 989 (7th Cir. 2002) (internal citations omitted).

Taking the facts in the light most favorable to Wilson, there is evidence that Otis altered and modified the car gate when it performed work on the elevator in 1995. The Illinois Code of Civil Procedure defines "alteration, modification or change" to mean "an alteration, modification or change that was made in the original makeup characteristics, function or design of a product or in the original recommendations, instructions and warnings given with respect to a product including the failure properly to maintain and care for a product." 735 ILL. COMP. STAT. ANN. 5/13-213(a). There is evidence that during the 1995 work an Otis employee installed a bolt onto the elevator's cable guard to keep the cable from coming out of the sheave, but that this guard did not prevent the cable from coming out of the sheave as intended. This bolt was a change in the original function and design of the elevator and its cable gate.

Further, there is evidence that Joe Wilson was in the elevator shaft to repair this problem at the time of this accident. Otis argues that Joe Wilson's death was not immediately caused by a malfunction of the car gate, but rather by him being trapped and crushed while in the elevator hoistway. However, if Joe Wilson was in the hoistway to repair a problem caused by a defect in the

elevator as altered in 1995, then that defect could be the proximate cause of his injuries. See Illinois Pattern Jury Instruction (IPI) Civil, No. 400.04 (2005 ed.) (Stating that proximate cause can be "[any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury]"). Whether or not a defect in the gate was the proximate cause of Joe Wilson's death is a factual dispute to be resolved at trial. *See Ritchie v. Glidden Co.*, 242 F.3d 713, 725 (7th Cir. 2001) (internal citations omitted).[2] Therefore, I deny Otis' motion as to counts I and II of Wilson's amended complaint.

IV.

Otis also argues that the Illinois construction statute of repose bars the negligence counts of Wilson's amended complaint (Counts III and IV) insofar as they allege negligent manufacture and design. Illinois' construction statute of repose provides, in relevant part:

---

[2] Otis also contends that this court should not consider the testimony upon which Wilson relies to show that Joe Wilson was in the elevator to repair the broken car gate. While that testimony might be inadmissible at trial, other evidence in the record does suggest that Joe Wilson was in the hoistway for this purpose. Further, Otis has not responded to Wilson's statement of additional material facts as required by Local Rule 56.1, so Wilson's statement of additional material facts is deemed admitted for purposes of this motion.

6

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

735 ILL. COMP. STAT. ANN. 5/13-214(b). Otis argues that the installation of the elevator in 1967 constituted an "improvement" to real property such that the statute of repose would bar plaintiff's claims, here brought some thirty years later. In response, Wilson concedes that the elevator is an improvement to real property but argues that the 1995 work Otis performed on the elevator was also an improvement such that the statute of repose restarted with that work and does not bar her present claims.

The Illinois Supreme Court has identified the following factors to determine what constitutes an improvement to real property: "whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced." *St. Louis v. Rockwell Graphic Sys., Inc.*, 153 Ill. 2d 1, 4, 178 Ill. Dec. 761, 762, 605 N.E.2d 555, 556 (1992) (internal citations omitted). In this case, the work Otis performed on the elevator in 1995 amounted to the replacement of the old cab, platform, and operating panel, and rewiring, cleaning and painting of other components. Taking the facts in the light most favorable to Wilson, these additions

7

were intended to be permanent and they did become an integral component to the overall system. From the facts both parties have presented, it is unclear whether the work increased the use and value of the property. Wilson has presented an affidavit from a certified elevator inspector opining that the work did so, but Otis challenges the veracity of this testimony and the qualifications of the expert to present this type of opinion. At the very least, Wilson has presented evidence that during the 1995 work an Otis employee added a bolt onto the elevator's cable guard; this change might have been enough to increase the use and function of the elevator by solving previous difficulties with opening and closing the elevator gate. It is also possible that the replacement of the cab and platform increased the use and value of the elevator by using a stainless steel cab that was more resistant to corrosion.[3] Therefore, I deny Otis' motion for summary judgment on portions of Counts III and IV of Wilson's amended complaint.

V.

Otis has also moved for summary judgment on the consumer fraud count of Wilson's amended complaint (Count V). In her response to Otis' motion, Wilson states that she does not contest Otis' motion as to this claim. I therefore grant Otis summary judgment as to Wilson's consumer fraud claim.

---

[3]Wilson alleges these facts in her statement of additional material facts, to which Otis has not responded, so these facts are deemed admitted for purposes of this motion.

VI.

For the foregoing reasons, I grant Otis' motion for summary judgment as to Count V of Wilson's complaint, and deny it as to the remaining counts.

**ENTER ORDER:**

Elaine E. Bucklo
United States District Judge

Dated: July 26, 2006